IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SETH D. HARRIS, Acting Secretary of
the United States Department of Labor                                    PLAINTIFF

v.                                                        CIVIL ACTION NO. 4:10cv77-DPJ-FKB

HERBERT C. BRUISTER, et al.                                          DEFENDANTS

ORDER

This ERISA case is before the Court on a number of pending motions:  (1) the Secretary's

*Daubert* Motion to Exclude Expert Testimony of Gregory P. Range [515]; (2) Plaintiff's *Daubert*

Motion to Exclude Expert Testimony of Dr. Glenda Glover [517]; (3) Plaintiff Secretary of

Labor's Motion for Summary Judgment [519]; (4) Plaintiff Secretary of Labor's Motion for

Partial Summary Judgment as to Defendants' Third, Fourth, Fifth, and Seventh Defenses [521];

(5) Defendants' Motion to Exclude Expert Report and Testimony of Dana Messina, One of

Plaintiff's Expert Witnesses [524]; (6) Defendants' Motion for Summary Judgment on All

Counts of the Second Amended Complaint on the Basis of the Applicable Statutes of Limitations

[527]; and (7) Defendants' Motion for Summary Judgment [530].

I.      Facts and Procedural History

        In a three-year period, Defendant Herbert C. Bruister sold 100% of the shares of Bruister

and Associates ("BA") stock to BA's employees through an Employee Stock Ownership Plan

("ESOP") governed by ERISA.[1]   The transfer was completed through five separate transactions,

_____

        [1]BA subsequently became known by another name intermittently referenced in the filings:
Southeastern Ventures, Inc.  Bruister Decl. [431-3] ¶ 2.  Herbert Bruister originally held all of
BA's outstanding stock, but transferred it Bruister Family LLC ("BFLLC"), in which Bruister
and his wife are the sole members and managers, prior to the commencement of these
transactions.

all of which are now disputed.  Plaintiff, the Acting Secretary of the United States Department of Labor, generally alleges that Defendants Bruister, Amy O. Smith, Jonda C. Henry, and J. Michael Bruce breached their fiduciary duties under ERISA when they approved the purchases.

Each purchase of BA Stock on behalf of the ESOP was made through an Employee Stock Ownership Trust ("ESOT").  Bruister and Amy Smith—as BA's directors—appointed themselves and initially Michael Bruce as trustees for the ESOT.  Jonda Henry later replaced Bruce.  Though Bruister was a trustee of the ESOT that purchased the stock from himself and his LLC, the parties dispute whether Bruister acted in a fiduciary capacity when the trustees authorized the purchases.

In all five transactions, the ERISA fiduciaries relied upon valuations prepared by Matthew Donnelly to assess the stock's sale price.  The Secretary asserts that Defendants did not adequately investigate Donnelly's qualifications before hiring him to value the company, supplied Donnelly with incomplete or inaccurate financial information, and were not reasonably justified in relying on Donnelly's valuations.  He contends that the sales prices for the transactions were inflated.

On April 29, 2010, the Secretary filed this lawsuit.  In the Second Amended Complaint, the Secretary raises claims for breach of fiduciary duty under ERISA §§ 404(a)(1)(A), (B), and (D); for failure to monitor under ERISA §§ 404(a)(1)(A) and (B); and for engaging in prohibited transactions under ERISA §§ 406(a)(1)(A) and 406(b)(1) and (2), all as to the five ESOP transactions.  Additionally, he raises a prohibited transaction claim under ERISA § 406(b)(3) related to Defendant Bruce's alleged receipt of a percentage of Bruister's proceeds from the

December 30, 2002 sale.  Following a protracted discovery period, the parties filed the instant

motions.  The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Analysis

    A.     Motions for Summary Judgment

    Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure

when evidence reveals no genuine dispute regarding any material fact and that the moving party

is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

    The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  Conclusory allegations,

speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute

for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*,

276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

(en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).  In reviewing the evidence, factual

controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have

submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.  When such contradictory

facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

"Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).  In the present case, the Court has concluded that portions of the motions can be granted while others should be denied.  Still other factual and legal issues present close calls under Rule 56.  Because a bench trial cannot be avoided, it is more prudent to carry the close issues forward and deny summary judgment.  This is especially so given the nearly 400 pages of briefing on the summary judgment issues alone and almost 5,000 pages of supporting record evidence.  While the Court has endeavored to digest the issues and the record, it anticipates that some issues will become more focused after a trial on the merits.

    1.      Statute of Limitations

        a.      The Applicable Limitations Period

Defendants argue that all claims are barred by the applicable statute of limitations. Before addressing that issue, the Court must determine whether the Mississippi or federal statute applies.  The only real dispute is whether the Secretary's claim against Bruister in Count III should borrow Mississippi's general three-year statute of limitations found in Mississippi Code section 15-1-49.  All other Counts are governed by ERISA's three-year statute of limitations found in § 413.[2]

---

[2]ERISA § 413 provides

No action may be commenced under this subchapter with respect to a fiduciary's

4

Count III avers that the five ESOT transactions were all prohibited under § 406(a)(1)(A). It then asserts a claim against Bruister as an "interested party" if he is not found to be a fiduciary. This alternative claim arises pursuant to the Secretary's right to bring suit under § 502(a)(5), 29 U.S.C. § 1132(a)(5). Bruister argues that because § 413 refers to ERISA part 4, and § 502(a)(5) is found in part 5, then § 413 cannot apply. He further argues that § 413 has no application to a claim against a non-fiduciary. Accordingly, Bruister maintains that absent an express limitations period in § 502, the Court must borrow Mississippi's general three-year statute of limitation under Section 15-1-49 for any claims against him as a non-fiduciary.

Whether § 413 applies to equitable relief against a non-fiduciary party in interest under § 502 is not firmly established. In *Reich v. Lancaster*, the Fifth Circuit applied § 413 to claims under § 502(a)(5) against a nonfiduciary found to have engaged in a prohibited transaction under § 406. 55 F.3d 1034, 1043, 1054–55 (5th Cir. 1995). But the state-verses-federal question was not examined. The same thing happened in *Landwehr v. DuPree*, where the Ninth Circuit, again without discussion, applied § 413 to a § 502 claim for "other appropriate equitable relief" arising out of a fiduciary breach. 413 72 F.3d 726, 731–32 (9th Cir. 1995) (applying the statute of

---

breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

. . .

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

limitations in ERISA § 413).  *But see Campanella v. Mason Tenders' Dist. Council Pension Plan*, 132 F. App'x 855, 856 (2d Cir. 2005) ("ERISA § 413 applies only to breach of fiduciary duty claims.").  Despite the somewhat thin authority, the Court concludes that § 413 does apply.

Section 502(a)(5) describes the remedies available to the Secretary.  29 U.S.C. § 1132(a)(5).  The statute parallels § 502(a)(3) that describes which private litigants may sue and for what remedies.  29 U.S.C. § 1132(a)(3).[3]  Neither section identifies the parties against whom suit may be brought.  With respect to a claim against a fiduciary, § 502(a)(5) would merely provide a remedy for violation of one of the substantive sections, like § 406, which preclude certain transactions with parties in interest.  But no such sections exist as to non-fiduciary parties in interest.  This omission was at the heart of the Supreme Court's *Harris Trust* decision, in which it concluded that § 502(a)(3) "itself imposes certain duties, and therefore that liability

---

[3]The relevant portions of § 502 state as follows:

(a) Persons empowered to bring a civil action

A civil action may be brought–

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

. . .

> (5) . . . by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter.

6

under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued."  530 U.S. at 245.

The Supreme Court's holding with respect to §502(a)(3) provides a clear picture of the Secretary's rights under § 502(a)(5), and demonstrates why claims under that provision fall within § 413.  The Court reached its decision by construing § 502(a)(3) in light of § 502(l).[4]  The Court paraphrased § 502(l) as follows: "the Secretary shall assess a civil penalty against an 'other person' who 'knowing[ly] participat[es] in' 'any *violation of part 4* by a fiduciary.'"  530 U.S. at 248 (ellipses omitted) (emphasis added).  The Court then concluded, "The plain implication is that the Secretary may bring a civil action under § 502(a)(5) against an 'other person' who 'knowing[ly] participat[es]' *in a fiduciary's violation*."  *Id.* (emphasis added).  In sum, the equitable remedy provided in § 502(a)(5) against a non-fiduciary arises when a fiduciary violates part 4.  *Id.*

Looking then to § 413, it begins, "No action may be commenced under this subchapter *with respect to* a fiduciary's breach of any responsibility, duty, or obligation under this part, *or*

_____

[4]Section 502(l) provides in relevant part:

(1) In the case of—

> (A) any breach of fiduciary responsibility under (or other violation of) part 4 of this subtitle by a fiduciary, or

> (B) any knowing participation in such a breach or violation by any other person,

the Secretary shall assess a civil penalty against such fiduciary or other person . . . .

29 U.S.C. § 502(l).

7

*with respect to a violation of this part*, after the earlier of . . ." two specified periods.  29 U.S.C. § 1113 (emphasis added).  This language amply covers equitable relief against a nonfiduciary under § 502(a)(5).  First, § 413 relates to claims "under this subchapter," *i.e.*, Title II of ERISA, which includes both parts 4 and 5.  Second, nothing in § 413 limits it to claims against fiduciaries.  Had Congress wished to accomplish that goal, it could have simply stated, "no action may be commenced under this subchapter *against a fiduciary.*"  Instead, § 413 by its plain terms relates to claims "*with respect to*" a fiduciary's breach "*or with respect to a violation of this part.*"  *Id.*  (emphasis added).  Equitable relief imposed against a non-fiduciary under § 502(a)(5) springs from knowing participation in "any *violation of part 4* by a fiduciary." *Harris Trust*, 530 U.S. at 248 (quoting 29 U.S.C. § 1132(l)) (emphasis added).  So a claim for equitable relief against a non-fiduciary under § 502(a)(5) is "with respect to a violation of this part [4]."  29 U.S.C. § 1113.

And in this case, the Secretary seeks equitable relief based on Bruister's alleged participation in a transaction that violated §406(a)(1)(A), which falls under Subchapter I, subtitle B, Part 4 of ERISA.  *See Solis v. Couturier*, No. 2:08–cv–02732–RRB–GGH, 2009 WL 1748724, at *2 (E.D. Cal. June 19, 2009) (applying the statute of limitations in ERISA § 413 to a § 502 claim for "other appropriate equitable relief" arising out a fiduciary breach); *cf.*, *Radford v. General Dynamics Corp.*, 151 F.3d 396, 399 (5th Cir. 1998) (concluding that claims against a fiduciary for relief allowed under § 502(a)(3) are governed by § 413, because the claims arise under part 4).[5]

---

[5]Both the federal and state statutes can in some circumstances be tolled, so the choice between § 413 and section 15-1-49 could be a distinction without a meaningful difference. Given this holding, the Court need not explore the matter further.

Because § 413 applies to all claims, there are two statutory windows to consider.  First, the claims must be brought within six years from the date of the last improper action.  29 U.S.C. § 1113(1).  Second, suit may be brought "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(2).

Defendants offer two alternative arguments for granting summary judgment under this statute.  They first contend that the three-year limitation period applies and was exhausted as to all five transactions before the Secretary filed the April 29, 2010 Complaint.  Defendants alternatively argue that even under the six-year period, the first two transactions remain time-barred.  The Secretary disputes both arguments invoking, among other things, two tolling agreements Defendants signed before the limitations periods expired.  The Court will begin by addressing the six-year limitations period before considering the three-year period found in § 413(2).  *See Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir. 1995) ("The statute specifies a two-step analysis of accrual of an ERISA action:  first, when did the alleged breach or violation occur; and second, when did the plaintiff have actual knowledge of the breach or violation?" (citation omitted)).[6]

### b.    The Six-Year Statute of Repose

The first two disputed transactions occurred more than six years before suit was filed and therefore beyond the outer limits of § 413(1).  But Defendants signed two tolling agreements, and

---

[6]Because § 413 applies, the Court need not consider Defendants' argument that the tolling agreements were limited to § 413 and would not cover claims for which the Mississippi limitations period applies.  Nevertheless, the language of the agreements is broad enough to cover "any manner the defense of statute of limitations . . . ."  2008 Tolling Agreement [523-1] ¶ 2.

the parties dispute whether those agreements, if valid, would excuse the late filing.  The threshold issue is whether § 413(1) may be tolled.

As the Secretary notes, "[s]tatutes of limitations generally fall into two broad categories: affirmative defenses that can be waived and so-called 'jurisdictional' statutes *that are not subject to waiver* or equitable tolling."  Pl.'s Mem. [523] at 13 (quoting *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 140 (2008) (Stevens, J., concurring) (emphasis added)).  When Congress intends the latter, it must be "clearly stated."  *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013) (citation and punctuation omitted).  "This is not to say that Congress must incant magic words in order to speak clearly.  We consider context, including this Court's interpretations of similar provisions in many years past, as probative of whether Congress intended a particular provision to rank as jurisdictional."  *Id.* (citation and quotation omitted).

The Secretary argues that this test is particularly onerous with a remedial statute like ERISA.  He also offers a list of other federal statutes the Supreme Court found to be nonjurisdictional with language that, according to the Secretary, "parallels" the language of § 413(1).  *See* Pl.'s Mem. [523] at 16–17.  But the cited statutes are in no way "parallel."  Aside from the less direct prohibitions in many of the examples, § 413(1) differs because it includes a three-year tolling provision and then an ultimate six-year bar, beyond which "[n]o action may be commenced."  In other words, § 413 creates "an absolute outside limit within which suits must be filed . . . ."  *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).

This same statutory scheme appeared in the Securities Exchange Act, which required suit within three years of the act or one year of discovery.  Like ERISA, the Securities Exchange Act has a "broad remedial purpose."  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 444 (1976).

10

Yet the Court held in *Lampf, Plera, Lipland, Prupis & Petigrow  v. Gilbertson*, that "[b]ecause the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period."  501 U.S. 350, 363 (1991).

The Fifth Circuit relied on *Lampf* in *Radford v. General Dynamics Corp.*, holding that § 413(1)'s six-year limitations period "is a statute of repose, establishing an outside limit of six years in which to file suit" and to which "tolling does not apply."  151 F.3d at 400.  The *Radford* Court explained that "[a]s a statute of repose, § 413 serves as an *absolute barrier* to an untimely suit."  *Id.* (emphasis added).

*Radford* did not use the word "jurisdictional" and considered only equitable tolling.  But the Fifth Circuit was more expansive when explaining *Radford* in *Archer v. Nissan Motor Acceptance Corp.,* 550 F.3d 506, 508 (5th Cir. 2008).  There, the court construed the limitations period found in the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691.  Citing *Radford*, the court clarified that the ECOA and ERISA are statutes of repose that "leave federal courts no power to extend the limitations period . . . ."  *Id.  Archer* specifically stated, "This is a statute of repose establishing with clear text a 'jurisdictional bar' under which 'federal courts lack the power to extend the period to allow for late adjudication of claims.'"  *Id.* (contrasting *Davis*, 158 F.3d at 810 (holding that *unlike* ERISA § 413(1), 28 U.S.C. § 2244(d)(1) did not "divest federal jurisdiction")); *see also Keiran v. Home Capital, Inc.*, 720 F.3d 721, 732 (8th Cir. 2013) (identifying § 413(1) as an example of Congress "explicitly" "choos[ing] to use a statute of repose to make the filing of a lawsuit necessary in order to exercise a statutory right . . .").

In light of *Radford* and *Archer*, the Court concludes that the six-year limitations period set forth in § 413(1) is a jurisdictional prerequisite to suit that cannot be waived or tolled.  *See* 4

11

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1056 (3d ed.)

("Moreover, a critical distinction is that a repose period is fixed and its expiration will not be

delayed by estoppel or tolling."); *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d

355, 363 (5th Cir. 2005) ("Thus, with the expiration of the period of repose, the putative cause of

action evanesces; life cannot thereafter be breathed back into it.").

The Court agrees with the Secretary that this result might seem "inequitable" if a valid

tolling agreement exists.  Pl.'s Mem. [523] at 22.  But equity will not toll a statute of repose.

*Radford*, 151 F.3d at 400.  Nor will consent remedy a constitutional deficiency in the Court's

jurisdiction.  *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850–51 (1986)

(observing that "parties by consent cannot confer on federal courts subject-matter jurisdiction

beyond the limitations imposed by Article III").

Defendants' motion for summary judgment is therefore granted in part as to the claims

arising out of the December 30, 2002 and December 19, 2003 transactions, which are dismissed

with prejudice.  Conversely, Plaintiff's motion for partial summary judgment is denied in part as

to these claims.  Because Bruce's potential liability arose solely out of the December 30, 2002

transaction, Bruce is dismissed from this action with prejudice.

    c.  The Three-Year Statute of Limitations

As to the claims arising out of the December 21, 2004, September 13, 2005, and

December 13, 2005 transactions, Defendants argue that they are barred by the three-year statute

of limitations contained in § 413(2).  The Secretary argues alternatively that (1) Defendants

waived this defense when they signed the tolling agreements, and (2) Defendants have not

established the Secretary had actual knowledge of the claims more than three years prior to filing

suit.  Because Defendants waived this defense, the Court will not address the actual-knowledge

issue.

Unlike ERISA § 413(1), § 413(2) is a statute of limitations that may be tolled by

agreement.  In this case, the Department of Labor, through its investigator Jennifer Del Nero,

began investigating the BA ESOP in 2007.  Del Nero Dep. [529-7] at 73, 188.  In November

2008, with the six-year anniversary of the BA ESOP's first purchase of BA stock approaching,

the Secretary sent Defendants a document entitled Agreement to Toll the Running of the Statute

of Limitations.  2008 Tolling Agreement [286-1].  That document stated that

> [a]s to any . . . actions initiated by the Secretary against [Defendants, Defendants]
> . . . . shall not assert in any manner the defense of statute of limitations, the
> doctrines of waiver, laches, or estoppel, or any other matter constituting an
> avoidance of the Secretary's claims that is based on the time within which the
> Secretary commenced such action.

*Id.* ¶ 2.  The document further stated that "the statute of limitations contained in ERISA § 413, 29

U.S.C. § 1113, shall be tolled from December 30, 2008 through April 1, 2009 . . . ."  *Id.*

Bruister, Smith, Henry, Bruce, and Defendants' counsel executed the document and returned it to

the Secretary.  No one acting on behalf of the Secretary ever signed the 2008 Tolling Agreement,

although it contains a signature block for a representative of the Secretary and the testimony

suggests that tolling agreements are typically signed by someone on behalf of the Secretary.  *See*

Schlecht Dep. [529-6] at 221; Del Nero Dep. [529-7] at 108; Holman Dep. [529-8] at 187, 188.

In March 2009, Defendants signed a second tolling agreement, acknowledging that they

had "previously entered into an Agreement to Toll the Running of the Statute of Limitations

which tolled ERISA's statute of limitations . . . ."  2009 Tolling Agreement [286-4].  That

document further reflected the parties' "desire to extend the tolling" and confirmed the

agreement that the statute of limitations "shall be tolled . . . from December 30, 2008 . . . through

and including the date 60 calendar days following the sending and transmission of a notice of

termination" as set forth in the agreement. *Id*. Sometime prior to April 29, 2010, the Secretary

provided Defendants a notice of termination under the 2009 Tolling Agreement. Defendants

contend that the 2008 Tolling Agreement was never signed by the Secretary or his representative

and is therefore unenforceable. Defs.' Mem. [536] at 26. They further contend that the second

agreement was never signed, though a factual dispute remains on that issue.

       The Court first concludes that the contracts were valid. "Whether an unsigned writing

constitutes a binding contract depends upon the intention of the parties." *Turney v. Marion Cnty.*

*Bd. of Educ.*, 481 So. 2d 770, 774 (Miss. 1985). Even where the signature is lacking, assent

"may be shown in other ways, as, for example, by the acts or conduct of the parties." *Id*. (citing

17 C.J.S. Contracts § 62 (1963)). The parties to this case demonstrated mutual assent by their

conduct. Most notably, the Secretary never sued until notice was given under the terms of the

tolling agreements, and Defendants acknowledged the existence of, and their assent to, the 2008

Tolling Agreement when they expressly extended it in the 2009 Tolling Agreement. *See* 2009

Tolling Agreement [286-4] (acknowledging that parties "previously entered into an Agreement to

Toll the Running of the Statute of Limitations which tolled ERISA's statute of limitations . . . "

and expressing mutual "desire to extend the tolling").

       Defendants contend that their signatures on the 2008 Tolling Agreement merely reflected

an offer to toll that was never accepted and therefore there was no intentional waiver on their

part. Defs.' Mem. [547] at 8. But again the 2009 Tolling Agreement belies the point,

demonstrating Defendants' understanding that the parties had "previously entered into" a tolling

agreement, "desire[d] to extend the tolling," and "mutually agree[d] . . . [t]he running of the statute of limitations . . . shall be tolled . . . from December 30, 2008 . . . ."  2009 Tolling Agreement [286-4].

Finally as to the validity of the agreement, Defendants overstate their primary authority, *United States v. Spector*, 55 F.3d 22 (1st Cir. 1995).  Though the First Circuit invalidated a contract because the government failed to sign it, the agreement expressly stated that it would become effective "upon execution" by all parties, including the government.  *Id*. at 24.  The First Circuit cautioned, however, "We emphasize that we are not saying that, to be enforced, an agreement to extend the statute of limitations must be made in writing, or must be signed by the government. . . .  We say only that, where the parties themselves have chosen to set forth the terms in writing, it makes sense to hold them to those terms, absent good reason to do otherwise."  *Id*., 55 F.3d 22, 26 n.4 (internal citation omitted).  Neither of the tolling agreements in this case include the provision that premised the First Circuit's analysis.

But even if the tolling agreements are not enforceable contracts for lack of execution, they still reflect a valid waiver.  "Waiver is the intentional relinquishment or abandonment of a known right."  *Wood v. Milyard*, 132 S. Ct. 1826, 1835 (2012) (citing *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004)) (internal quotation marks and additional citation omitted).  A waiver

> contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and conditions of a contract.  It is the voluntary surrender of a right.  To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived.

*Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 212–13 (5th Cir. 2009) (quoting *Taranto Amusement Co. v. Mitchell Assos., Inc.*, 820 So. 2d 726, 729–30 (Miss. Ct. App. 2002)) (additional citation omitted).

In this case, Defendants committed an act "fairly evidencing an intention permanently to surrender" their limitations defenses when they signed the 2008 Tolling Agreement.  They were represented by counsel at that time who suggested revisions to the draft prepared by the Secretary.  *See* November 2008 emails [523-2, 523-3].   The terms of the agreement state:

> [Defendants] shall not assert in any manner the defense of statute of limitations, the doctrines of waiver, laches, or estoppel, or any other matter constituting an avoidance of the Secretary's claims that is based on the time within which the Secretary commenced such action.

2008 Tolling Agreement [523-1] ¶ 2.  Although no representative of the Secretary signed this agreement, it reflects Defendants' intent, and both parties operated as if it was in force.  *Cf. Ware v. Reed*, 709 F.2d 345, 350 (5th Cir. 1983) ("The record disclosed that plaintiff signed a waiver form to take the polygraph examination.  The signing of a waiver form 'though not conclusive, is "usually strong proof" of the voluntariness of the waiver.'" (citing *Blasingame v. Estelle*, 604 F.2d 893, 896 (5th Cir. 1979); *North Carolina v. Butler*, 441 U.S. 369, 373 (1979))).  At a minimum, Defendants' signatures on the second tolling agreement acknowledges their knowing and voluntary waiver.  *See* 2009 Tolling Agreement [286-4] (acknowledging that parties "previously entered into an Agreement to Toll the Running of the Statute of Limitations which tolled ERISA's statute of limitations . . . " and expressing mutual "desire to extend the tolling").[7]

---

[7]The Secretary clearly relied upon this representation to his detriment in forgoing suit at an earlier time.

16

Defendants alternatively argue that Mississippi Code section 15-1-5 "bars the Secretary from entering into the State of Mississippi and asserting the right to enforce the Tolling Documents."  Defs.' Mem. [547] at 25 (capitalization altered).  It is certainly true that section 15-1-5 bars tolling agreements in Mississippi, but the statute applies only to "[t]he limitations *prescribed in this chapter . . . .*"  Section 15-1-5 has no application to limitations periods found in other state or federal statutes.  *See Townes v. Rusty Ellis Builder, Inc.*, 98 So. 3d 1046, 1052 (Miss. 2012) (holding that section 15-1-5 does not apply to limitations period found in another portion of the Mississippi Code).  This case is governed by ERISA § 413; section 15-1-5 is of no moment.

Because Plaintiff has established that Defendants knowingly and voluntarily waived their limitations defenses, Plaintiff's motion for partial summary judgment is granted in part and Defendants' third (limitations), fourth (laches), fifth (estoppel), and seventh (waiver) affirmative defenses may not be asserted as to the timeliness of the Secretary's remaining claims under section 413(2).

2.      Liability Under ERISA

Stated succinctly, the Secretary asserts that Defendants breached their fiduciary duties to the ESOP by overpaying for BA's closely-held stock in the Subject Transactions.  Pl.'s Second Am. Compl. [286].  As necessary elements of his claims, the Secretary "must prove a breach of a fiduciary duty and a prima facie case of loss to the plan."  *In re Dynegy, Inc. Erisa Litig.*, 309 F. Supp. 2d 861, 872 (S.D. Tex. 2004).  "'Once the plaintiff has satisfied these burdens, the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by . . . the breach of duty."  *Id.* (quoting *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir.

17

1995)).  ERISA § 409 imposes liability on "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter . . . ."  29 U.S.C. § 1109.  Thus, a threshold question in this case is which Defendants were fiduciaries.[8]

a.     Who Is A Fiduciary

It is undisputed that Smith and Henry were fiduciaries for purposes of the Secretary's claims.  It also appears undisputed that Bruister and Smith, in their capacity as members of the BA board of directors, were fiduciaries for the limited purpose of monitoring and/or removing ESOP fiduciaries.  *See infra*, at section 2(c)(1).  But the parties dispute whether Bruister was a fiduciary, and thus whether he is subject to liability, for the Subject Transactions.

Section 1002 of Title 29 defines several terms under ERISA and states:

> [A] person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice . . . , or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  And in Part 4, which addresses fiduciary responsibility, ERISA requires that each plan "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan."  29 U.S.C. § 1102(a)(1).  A named fiduciary is "a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary . . . ."  *Id.* § 1102(a)(2).

---

[8]The Court notes that whether the ESOP suffered a loss is distinct from whether fiduciary duties were breached.  The loss question goes to damages, not liability.  *LaScala v. Scrufari*, 479 F.3d 213, 221 (2d Cir. 2007) ("The fact that the Funds may not have suffered any loss as a result of Russell's salary increases may bear on the question of damages, but has no bearing on whether Scrufari breached his fiduciary duties in the first place." (footnote omitted)).

The Secretary asserts that because Bruister "maintained functional authority over the Plans and the process leading up to the Plans' decisions," he is exposed to fiduciary liability. Pl.'s Mem. [520] at 31.  Defendants counter that Bruister faces no fiduciary liability because—according to them—he abstained from all relevant decisions and documented that abstention.  *E.g.*, 2004 SPA [534-3] at 15 ("Bruister refrained from taking any action as a member of the ESOT's Board of Trustees with respect to this 2004 ESOP [SPA] . . . ."); Sept. 2005 Trustee Resolution [535-9] at 2 (essentially the same).

Defendants' approach appears too rigid.  Instead, the Court applies the so called "two-hats" doctrine, "which acknowledges that the employer is subject to fiduciary duties under ERISA only 'to the extent' that it performs three specific functions identified by Congress" in § 1002(21)(A).  *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 412 (5th Cir. 2003) (citation omitted).  And as stated above, that section classifies one as a fiduciary only to the extent he *exercises* certain authority or control over plan management or assets; *renders* investment advice; or *possesses* discretionary authority or responsibility in plan administration.  29 U.S.C. § 1002(21)(A).  Thus,

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1459–60 (5th Cir. 1986).

So recording an abstention does not answer the question under § 1002(21)(A).  The question is more nuanced and includes whether Bruister "exercise[d] any authority or control

respecting management or disposition of [the plan's] assets." § 1002(21)(A); *see Schloegel v. Boswell*, 994 F.2d 266, 271–72 (5th Cir. 1993) ("To satisfy the 'authority or control' element under subsection (I), the Plaintiffs must demonstrate that [an advisor] caused [the trustee] to relinquish his independent discretion in investing the plan's funds and follow the course prescribed by [the advisor]." (citing *Sommers*, 793 F.2d at 1460)); *see also Pegram*, 530 U.S. at 226; *Hatteburg v. Red Adair Co. Inc. Employees' Profit Sharing Plan & Its Related Trust*, 79 F. App'x 709, 716 (5th Cir. 2003) (indicating conduct more important than titles for determining fiduciary status); *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 418 (5th Cir. 1990) ("Thus, it will be the task of the court on remand to determine precisely the extent, as a factual matter, of *actual* fiduciary authority *possessed* or *exercised* by ALPA, Huttinger, and TACA with respect to the wrongs alleged by the pilots.").

Looking then to the facts, the Court cannot say as a matter of law whether Bruister acted as a fiduciary. Defendants present record evidence that Bruister abstained, and there is testimony corroborating those documented representations of abstention.[9] But there is also testimony in the record that suggests Bruister participated in the decision-making process despite technically abstaining from voting on the Subject Transactions.[10] Because of this fact question, the

---

[9]*See, e.g.*, Bruister Dep. [549-4] at 83–84 ("I personally did not get involved in that because I was the seller, so anything related to movement of money or valuation or anything related to ESOP, I always abstained from any involvement with that."); *see also id.* at 162 ("[B]ecause I was a seller, I abstained from—I had little or absolutely no involvement of putting these together because, you know, that was done by the other trustees, I abstained."); Henry Dep. [549-9] at 140 ("Herb always abstained and it was Amy and myself.").

[10]*See, e.g.*, Bruister Admin. Dep. [520-1] at 111 ("I'm not sure if abstaining is the proper word. Abstain seems to imply to me that you had absolutely no input, . . . abstain is like you walked out of the room. I never walked out of the room . . . . What I was saying to the other trustees is because of my position as the seller, that I think . . . this decision should be more

Secretary's motion for summary judgment is denied in part with respect to the § 1104 claims

against Bruister.  Likewise, Defendants are not entitled to summary judgment on the question

whether Bruister was acting as a fiduciary.

>    b.    Direct-Liability Claims

The Secretary asserts direct-liability claims under ERISA § 404, which imposes liability

for breaches of duties of prudence and loyalty, and § 406, which prohibits fiduciaries from

authorizing certain transactions.

>    (1)    Breach of Fiduciary Duties, ERISA § 404

The Secretary claims that Defendants breached their duties of prudence by engaging in

the Subject Transactions for more than fair market value and that Bruister also breached his duty

of loyalty.  ERISA § 404 contains that statute's prudent-man standard and provides in part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest
> of the participants and beneficiaries and—
>> (A) for the exclusive purpose of:
>>> (I) providing benefits to participants and their
>>> beneficiaries; and
>>> (ii) defraying reasonable expenses of administering
>>> the plan;
>> (B) with the care, skill, prudence, and diligence under the
>> circumstances then prevailing that a prudent man acting in a like
>> capacity and familiar with such matters would use in the conduct
>> of an enterprise of a like character and with like aims . . . .

29 U.S.C. § 1104(a); *see Kopp v. Klein*, 722 F.3d 327, 336 (5th Cir. 2013) (discussing duties of

prudence and loyalty in ESOP context).

---

highly weighted by your input than possibly mine.  That doesn't mean that I might not give you
my opinion."); *id.* at 121 ("There'd be a vote and we'd all say okay."); Henry Dep. [520-1] at
362–63 (stating that the three trustees were present at the discussions and "when the three of us
were together we talked, we said looks good, you know").

Starting with the loyalty claim against Bruister, Defendants assert that he was not a fiduciary. Whether he was a fiduciary is a question of fact precluding summary judgment on this issue.[11] As to the prudence claim, the Court must first resolve a threshold dispute over the proper standard of review and whether a "presumption of prudence" applies.

(a)     *Moench* Presumption

Defendants argue that the so-called *Moench* presumption applies to the claims under § 404.[12]  *Moench v. Robertson*, 62 F.3d 553, 569–71 (3d Cir. 1995).  Under *Moench*, "a fiduciary of [an ESOP or EIAP] is entitled to a presumption that his decision to invest in the employer's securities was prudent." *Kirschbaum v. Reliant Energy Inc.*, 526 F.3d 243, 254 (5th Cir. 2008) (adopting *Moench*).  Though this language may seem superficially relevant, the *Moench* presumption was adopted to address a set of specific problems not present in this case.

The ESOP in *Moench* required the trustee to "invest all contributions received under the terms of the plan . . . in ESOP stock." 62 F.3d at 558.  And, as *Moench* observed, ERISA reflects Congressional preference for investment in ESOPs. *Id.*  Yet trustees still have a duty of prudence, and circumstances may exist where the employer's stock is such a bad investment that a prudent man would divest and/or diversify. *See Kirschbaum*, 526 F.3d at 253.  "The question

---

[11]Bruister's position on both sides of the transaction is not inherently impermissible, but he must have acted for the exclusive purpose of the plan beneficiaries. *Cf. Smith v. Sydnor*, 98-CV-241, 2000 WL 33687953, at *16 (E.D. Va. Aug. 25, 2000) ("[T]he fact that a plan fiduciary may also benefit from a transaction involving plan assets does not constitute a violation of the fiduciary's duties under ERISA so long as the action was taken prudently and in the best interest of plan participants and beneficiaries." (citing *Donovan v. Bierwirth*, 680 F.2d 263, 267 (2d Cir. 1982))).

[12]The Secretary misconstrues Defendants' argument as applying to claims under §§ 404 and 406, but Defendants correctly limit this argument to the § 404 claim. *See* Defs.' Reply [557] at 1–2.

22

is how to define when the duty of prudence might require a fiduciary to disobey the clear requirements of an EIAP [or ESOP] and halt the purchase of employer stock."  *Id.*

In *Moench*, the Third Circuit attempted "to strike the proper balance" between these conflicting policies by adopting "an abuse of discretion standard of review for a fiduciary of an . . . ESOP . . . that is designed to invest primarily in an employer's stock."  *Id.* at 254 (citing *Moench*, 62 F.3d at 571).  "The *Moench* court held that because ESOP fiduciaries, unlike other fiduciaries, are presumptively required to invest in employer securities, their decision to invest in those securities should not be reviewed de novo, like the decision to invest in other securities.  Instead, the court held the decision to invest in employer securities should be reviewed for abuse of discretion."  *Kopp*, 722 F.3d at 336 (internal citations to *Moench* omitted).  The Fifth Circuit adopted this presumption in *Kirschbaum*, noting that without it, ERISA's "statutory preference for ESOPs" would be jeopardized.  526 F.3d at 254 (citing *Moench*, 62 F.3d at 570).

The present case avoids the dichotomy *Moench* remedied.  The presumptively prudent fiduciary act that *Moench* protects is the "decision to invest in employer securities" when some other investment decision—like divestment or diversification—might otherwise be prudent.  *Kirschbaum*, 526 F.3d at 254.  No such dispute exists here because the claims do not involve the "decision to invest" in BA stock.  *Id*.  The issue is instead whether the plan paid too much.  And there is no policy conflict related to the alleged purchase of employer stock at inflated prices.[13]

---

[13]*Kirschbaum* rejected the argument that *Moench* does "not apply at all where allegations, like [the plaintiff's], relate to the fiduciaries' knowing purchases of stock at an artificially inflated price."  526 F.3d at 254.  Though Defendants cite this language, the price inflation issue in *Kirschbaum* was directly linked to diversification because the plaintiffs believed the fiduciaries breached their duties by failing to diversify when they knew the company's publically traded stock was artificially inflated.  *Id*.  That link to the "decision to invest" was apparent from the court's conclusion regarding that argument:  "*Moench* presumption logically applies to any

23

Neither *Moench* nor the cases Defendants cite apply the prudence presumption to claims like those presented in this case.  Yet before and after *Moench*, the Fifth Circuit has applied a consistent standard for such claims.  *See Bussian*, 223 F.3d at 299; *Donovan v. Cunningham*, 716 F.2d 1455, 1465 (5th Cir. 1983); *see also DeFazio v. Hollister, Inc.*, 854 F. Supp. 2d 770, 791–92 (E.D. Cal. 2012) (refusing to apply *Moench*).  Absent authority applying *Moench* in this context, the prudence presumption will not be applied to the Secretary's claims under ERISA § 404.  The matter will be evaluated under the standards announced in *Cunningham*.[14]

(b)      Breach of Duty of Prudence

ERISA requires that "a fiduciary discharge his duties with respect to a plan . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."  29 U.S.C. § 1104(a).  Under this standard,

> courts objectively assess whether the fiduciary, at the time of the transaction, utilized proper methods to investigate, evaluate and structure the investment; acted in a manner as would others familiar with such matters; and exercised independent judgment when making investment decisions.  [ERISA's] test of prudence . . . is one of conduct, and not a test of the result of performance of the investment.  The focus of the inquiry is how the fiduciary acted in his selection of the investment, and not whether his investments succeeded or failed.  Thus, the appropriate inquiry is whether the individual trustees, at the time they engaged in

---

allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock." *Id*.  Again, the issue was whether to invest in employer stock.

[14]Even if *Moench* applied, the Court would not grant summary judgment to Defendants because a question would remain whether the presumption was rebutted.  *See Kopp*, 722 F.3d at 339 (observing Fifth Circuit rebuttal test "requiring plaintiffs to show that the defendants knew or should have known the viability of the company was threatened or the employer's stock was in danger of becoming worthless to rebut the presumption of prudence"); *see also Moench*, 62 F.3d at 572 (observing that "if the fiduciary cannot show that he or she impartially investigated the options, courts should be willing to find an abuse of discretion").

24

the challenged transactions, employed the appropriate methods to investigate the
merits of the investment and to structure the investment.

*Bussian*, 223 F.3d at 299 (quoting *Laborers Nat'l Pension Fund v. N. Trust Quantitative*

*Advisors, Inc.*, 173 F.3d 313, 317 (5th Cir. 1999)).  This is an objective standard, and a

fiduciary's subjective good faith "is not a defense to a claim of imprudence."  *In re Dynegy*, 309

F. Supp. 2d at 875 (citing *Reich*, 55 F.3d at 1046; *Cunningham*, 716 F.2d at 1467).

The parties appear to agree that the prudence question turns on the fiduciaries' decision to

rely on their valuation expert, Donnelly, to establish the fair market values for the subject

transactions.  A fiduciary is entitled to obtain advice from experts and rely on that advice to make

fiduciary decisions.  *Bussian*, 223 F.3d at 300–01 (citing *Cunningham*, 716 F.2d at 1474).  But

"fiduciaries may not . . . rely blindly on that advice."  *Id.*; *see Cunningham*, 716 F.2d at 1474

("An independent appraisal is not a magic wand that fiduciaries may simply wave over a

transaction to ensure that their responsibilities are fulfilled.  It is a tool and, like all tools, is

useful only if used properly.").  "In order to rely on an expert's advice, a 'fiduciary must (1)

investigate the expert's qualifications, (2) provide the expert with complete and accurate

information, and (3) make certain that reliance on the expert's advice is reasonably justified

under the circumstances."  *Bussian*, 223 F.3d at 301 (quoting *Howard v. Shay*, 100 F.3d 1484,

1489 (9th Cir. 1996)); *see Cunningham*, 716 F.2d at 1467, 1474, *cited with approval in Howard*,

100 F.3d at 1489; *see also Chao v. Hall Holding Co.*, 285 F.3d 415, 430 (6th Cir. 2002)

(applying same test).

The question at this stage—under Rule 56—is not whether the three prongs have been

factually established but whether they have been established as a matter of law.  As to some of

25

these issues, there appears to be a question of fact. Others present a close call even under Rule 56. The Court concludes, therefore, that these issues should be tried. *Firman*, 684 F.3d at 538 (noting well-established authority to deny summary judgment when "the better course would be to proceed to a full trial"). While the Court has spent considerable time marshaling the submissions and considering the issues, there is concern that something may have been overlooked or missed. The case will proceed to trial on other issues anyway, so it seems more prudent to carry these issues forward and allow the parties a full opportunity to argue their positions and highlight their relevant evidence.

(2)      Section 406 Prohibited Transactions

In addition to the fiduciary duties found in § 404(a), ERISA also prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—(A) sale or exchange, or leasing, of any property between the plan and a party in interest . . . ." 29 U.S.C. § 1106(a)(1). Defendants assert that the transactions in question are exempt and permissible under § 408(e). Under that section, the prohibition found in § 406 "shall not apply to the acquisition or sale by a plan of qualifying employer securities . . . if such acquisition, sale, or lease is for adequate consideration . . . [,] if no commission is charged with respect thereto, and . . . [if] the plan is an eligible individual account plan . . . ." 29 U.S.C. § 1108(e). This is an affirmative defense that must be proved by the fiduciary. *Harris v. Amgen, Inc.*, 717 F.3d 1042, 1059 (9th Cir. 2013) (citing *Howard*, 100 F.3d at 1488); *accord Cunningham*, 716 F.2d at 1467–68. It is undisputed that the ESOP was an eligible plan and that no commission was charged on the Subject Transactions. The parties dispute, however, whether the ESOP received adequate consideration.

26

"Section 408(e) has been interpreted to allow [a]n ESOP [to] acquire employer securities in circumstances that would otherwise violate Section 406 if the purchase is made for 'adequate consideration.'"  *Matassarin v. Lynch*, 174 F.3d 549, 567 (5th Cir. 1999) (citation and quotations omitted).  "[I]n the case of an asset other than a security for which there is a generally recognized market," as is the case here, ERISA defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary."  29 U.S.C. § 1002(18).  Although no regulations have been adopted as required by that definition, DOL has proposed regulations requiring a fiduciary to show both the payment of fair market value and that the fair market value was determined in good faith.  Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17,632, 17,633 (May 17, 1988) (to be codified at 29 C.F.R. pt. 2510); *see Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618–20 (2d Cir. 2006).  Although the regulations have never been adopted, several circuit courts of appeals have followed them, representing the majority position.  *See Henry*, 445 F.3d at 619 (collecting cases and noting "numerous circuit courts have adopted the DOL's proposed definition of adequate consideration"); *Keach v. U.S. Trust Co.*, 419 F.3d 626, 636 n.5 (7th Cir. 2005) (explaining DOL's, test found in proposed regulations, is consistent with commonly employed judicial test).  *But see Herman v. Mercantile Bank, N.A.*, 143 F.3d 419, 421 (8th Cir. 1998) (stating prohibited transaction may be exempt absent good faith if hypothetical prudent trustee would have nonetheless engaged in transaction).

"The role of courts in reviewing the adequacy of consideration in an ERISA case is to determine whether the fiduciary can show that the price paid represented a good faith

determination of the fair market value of the asset, 'not to redetermine the appropriate amount for itself *de novo*.'"  *Henry*, 445 F.3d at 619 (quoting *Hall Holding*, 285 F.3d at 437).  "In establishing that there has been compliance with the statutory mandate, '[t]he degree to which a fiduciary makes an independent inquiry is critical.'"  *Keach*, 419 F.3d at 636 (quoting *Eyler v. Comm'r of IRS*, 88 F.3d 445, 456 (7th Cir. 1996)).  And as previously discussed in the § 404 context, fiduciaries may point to an expert's guidance as evidence of a good-faith investigation. *Bussian*, 223 F.3d at 300–01.

But fiduciaries may not blindly rely on that advice and "must 'investigate the expert's qualifications,' 'provide the expert with complete and accurate information' and 'make certain that reliance on the expert's advice is reasonably justified under the circumstances.'"  *Keach*, 419 F.3d 637 (quoting *Howard*, 100 F.3d at 1489) (additional citations omitted).  For the same reasons discussed above, the Court is not willing to rule as a matter of law whether Defendants acted in good faith to determine the fair market value for the Subject Transactions and thus whether they received adequate consideration.  This aspect of Defendants' motion is therefore denied.

c.      Derivative-Liability Claims

The Secretary also asserts claims that Bruister and Smith, as BA directors, breached their duty to monitor the fiduciaries and that Defendants are liable as co-fiduciaries.  Claims for breach of the duty to monitor and for co-fiduciary liability are derivative claims necessitating first some breach of fiduciary duty.  *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 580–81 (S.D.N.Y. 2011).

(1)     Duty to Monitor

The Secretary claims that Bruister and Smith, as members of the board of directors, had a duty to monitor the ESOP fiduciaries.  Defendants agree that ERISA creates such a duty.  Defs.' Mem. [531] at 42.  "A person or entity that has the power to appoint, retain and/or remove a plan fiduciary from his position has discretionary authority or control over the management or administration of a plan and is a fiduciary to the extent that he or it exercises that power."  *In re Enron Corp.*, 284 F. Supp. 2d at 552 (citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996)); *see also Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988) (citing *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir. 1984) ("The fact that Engle and Libco had only limited fiduciary responsibilities does not mean that they had no responsibilities whatever.  As the fiduciaries responsible for selecting and retaining their *close business associates* as plan administrators, Engle and Libco had a duty to monitor appropriately the administrators' actions." (emphasis added))).

The Fifth Circuit has had few opportunities to consider an ERISA-monitoring claim of this sort.  But earlier this year, the court noted in *Kopp* that a "claim for breach of fiduciary duty to appoint, inform, and monitor plan fiduciaries is a derivative claim . . . ."  722 F.3d at 344 (citing *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 695 (W.D. Tex. 2008) ("To be held responsible for a failure to monitor or as a co-fiduciary, Plaintiffs must establish an underlying breach of fiduciary duty.")).  So if the breach-of-fiduciary-duty claims fail, then so will the monitoring claim.  To that extent, these are both issues for trial.

Regardless, Defendants argue that the monitoring claim fails because "[t]he duty to monitor . . . is limited to situations where the monitoring fiduciary has 'notice of possible misadventure by their appointees.'"  Defs.' Mem. [531] at 42 (citing *In re Enron Corporation Sec. & ERISA Litigation*, 284 F. Supp. 2d 511, 555 (S.D. Tex. 2003) (other citations omitted)).[15] Defendants then argue that they lacked notice as a matter of law.  But that argument seems dubious given that Bruister and Smith appointed themselves as ESOP fiduciaries and were aware of the details of each disputed transaction.  Whether Bruister and Smith were on notice of the alleged breaches by the ESOP fiduciaries—which included Smith and arguably Bruister—seems intertwined with the question whether breaches occurred, and that is an issue for trial.

Bruister also offers two arguments distinct to himself.  Unless the Court is missing the point, Bruister seems to first argue that because he abstained he was not wearing his fiduciary hat with respect to the disputed decisions and therefore cannot face liability for failing to monitor. Defs.' Mem. [531] at 43.  That argument first fails on the question of fact regarding his actual abstention.  But beyond that, the monitoring claim is directed toward Bruister's responsibility as a BA board member with oversight for the ESOP fiduciaries, and not based on his responsibility as one of those ESOP fiduciaries.  *See Leigh*, 727 F.2d at 135 (explaining fiduciary duties of those "responsible for selecting and retaining" administrator).  He did not abstain from his responsibilities as a BA board member.

---

[15]Neither party cites a Fifth Circuit opinion for this standard, and the Court is not aware of one.  Other courts have, however, applied varying versions of a notice provision.  *See, e.g.*, *Liss v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998) (holding that liability for failure to monitor arises when the defendant knows or has reason to know of a breach).

Finally, Bruister makes a different argument with respect to his abstention:  "There is no basis to expand the monitoring duties imposed on Bruister where the absence of monitoring action was intended to add weight to the abstention procedures and to ensure that the ERISA fiduciaries who acted for the ESOT were not subject to the de facto control of Mr. Bruister." Defs.' Mem. [531] at 44.  There is no authority offered for this argument.  But assuming the argument is legally correct, it rests on the same question of fact.  Regardless, the proposition might have more appeal had Bruister actually distanced himself from the discussions.  Though a question remains whether he abstained from the ultimate decisions, the record is undisputed that Bruister was physically present during relevant discussions and had conversations with BA lawyer David Johanson and Donnelly regarding the ESOP.  Summary judgment is denied.

(2)      Co-Fiduciary Liability

Unlike the duty to monitor, ERISA contains an express provision creating co-fiduciary liability.  29 U.S.C. § 1105.  Under that section,

> a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> > (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> >
> > (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> >
> > (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

31

*Id.* § 1105(a).  But the only basis for dismissal asserted by Defendants is that Bruister was not acting as a fiduciary and thus is not liable as a co-fiduciary.  Defs.' Mem. [531] at 42.[16]  The Court has already recognized that factual disputes foreclose that argument, and consistent with that finding, Defendants' motion is denied with respect to the co-fiduciary claims.

3.      Remedies

Defendants finally argue that the Secretary's claims fail because the amounts actually received by the sellers in the ESOP transactions is less than the amount the Secretary's valuation expert says the ESOT should have paid.  As such, Defendants argue, there was no actual loss to the ESOT, restitution is therefore inappropriate, and no "other appropriate equitable relief" is proper under § 502(a)(5).  *See Cunningham v. Dun & Bradstreet, Inc.*, 105 F.3d 655, No. 95-601416, 1996 WL 762915, at *1 (5th Cir. Dec. 19, 1996) (unpublished table decision) ("A grant of equitable restitution, however, is warranted only when the defendant has profited unjustly at the plaintiff's expense." (citations omitted)).  But this argument focuses exclusively on the Secretary's claims "that the BAI ESOT paid consideration in excess of adequate consideration." Defs.' Reply [557] at 7.  As the Secretary makes clear, he also advances claims based on Defendants' unlawfully engaging in prohibited transactions under § 406 and seeks recission of those transactions as an equitable remedy.  Pl.'s Resp. [540] at 32.

Whether the claims related to the alleged breaches of § 406 are asserted against Defendants in their fiduciary capacities under § 502(a)(2) or against Bruister as a party-in-interest under § 502(a)(5), the Secretary may seek "appropriate equitable relief" to "redress [the]

---

[16]Defendants apparently have not sought dismissal of the co-fiduciary claims against Smith and Henry independent of previously asserted arguments that those defendants did not breach their fiduciary duties.

violations."  29 U.S.C. § 1132(a)(5); *see also id.* §§ 1132(a)(2) (authorizing the Secretary to

pursue relief under § 409 (29 U.S.C. § 1109)) and 1109(a) (authorizing "such other equitable or

remedial relief as the court may deem appropriate").

      Under § 502(a)(2) and § 409, "equitable or remedial relief" "generally includes all of the

kinds of relief available to restore the [plan's] losses or protect [it] from future harm," including

"recission, removal of the trustee, appointment of a receiver, and other similar relief."  *Sommers*,

793 F.2d at 1463 (internal citations omitted).  And "equitable relief" under § 502(a)(5) "refer[s]

to 'those categories of relief that were typically available in equity,'" including recission.  *Great-*

*West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citing *Mertens v. Hewitt*

*Assocs.*, 508 U.S. 248, 255 (1993)); *see Gorman v. Carpenters' & Millwrights' Health Benefit*

*Trust Fund*, 410 F.3d 1194, 1200 (10th Cir. 2005) ("Other circuits have determined that in

appropriate circumstances, rescission may be 'appropriate equitable relief' within the meaning of

§ 1132(a)(3)(B)." (citation omitted)); *Griggs v. E.I. DuPont de Nemours & Co.*, 385 F.3d 440,

449 (4th Cir. 2004); *Eaves v. Penn*, 587 F.2d 453, 463 (10th Cir. 1978); *Chesemore v. Alliance*

*Holdings, Inc.*, 09-CV-413-WMC, 2013 WL 2445036 at *14 (W.D. Wis. June 4, 2013) ("To

prevent Fenkell from benefitting from his own fiduciary breach, therefore, the court will order

that Fenkell restore the full $2,896,000 he received in phantom stock proceeds to Trachte, on the

condition that Trachte reinstate Fenkell's phantom stock. Assuming Trachte accepts this

arrangement, it will place Fenkell and the Trachte ESOP plan in the same position they would

have been but for Fenkell's breach."); *Guardian Life Ins. Co. of Am. v. Claydon*, 855 F. Supp. 43,

44 (D. Conn. 1994).

Because recission—or some other equitable relief—may be awarded if the Secretary prevails on his claims, the Court will carry the issue of what type of relief would be appropriate to trial.  *See Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 444 (6th Cir. 2002) ("[A] district court is given wide latitude in compensating the participants in an ESOP when a breach of fiduciary duty has been shown.").[17]  Defendants' motion on this point is denied.

Finally, Defendants assert in their reply that recission cannot be ordered in this case because the seller in the 2004 and 2005 ESOT Transactions—the Bruister Family Limited Liability Company—is not a party to this case.  While Defendants are technically correct, the Court is mindful of the fact that this case will be consolidated for trial with the companion case brought by plan participants Rader and Sealy, who did name BFLLC as a defendant.  To the extent recission should be ordered as to BFLLC, the Court will have all the proper parties before it following consolidation.

B.   *Daubert* Motions

As to the three *Daubert* motions, the Court notes that the matter is set for a bench trial. The Fifth Circuit has made clear that "the importance of the trial court's gatekeeper role is significantly diminished in bench trials . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence."  *Whitehouse Hotel Ltd. P'ship v. C.I.Ri*, 615 F.3d 321, 330 (5th Cir. 2010) (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)); *see also Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2008 WL 1930681, at *2 (E.D La. Apr. 29, 2008) (collecting cases).  Because the Court wishes to hear the experts before

---

[17]To the extent some set-off calculation needs to be made to determine the proper amount of restitution, if any, to award, such a determination necessarily involves fact questions as to the fair market value of the stock at the time of each transaction.

deciding the admissibility of their testimony, the Court denies the motions without prejudice. The parties may challenge the experts at trial.

III.     Conclusion

      The Court has considered all of the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment [521] is granted in part, and the claims arising out of the December 21, 2004, September 13, 2005, and December 13, 2005 transactions are deemed timely under ERISA section 413(2).  The motion is otherwise denied.  Defendants' Motion for Summary Judgment [527] is granted in part, and the claims arising out of the December 30, 2002 and December 19, 2003 transactions, including all claims against Defendant J. Michael Bruce, are dismissed with prejudice for lack of jurisdiction as time-barred.  The motion is otherwise denied.  The remaining motions [515, 517, 519, 524, 530] are denied without prejudice to the parties re-urging some of the arguments at trial as outlined in the order.

      **SO ORDERED AND ADJUDGED** this the 20th day of December, 2013.

                                                       s/ *Daniel P. Jordan III*
                                                UNITED STATES DISTRICT JUDGE